IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARQUEZ WINTERS,

    Petitioner,

vs.                                No. 06-2196-B/V

TONY PARKER,

    Respondent.

ORDER DIRECTING CLERK TO REFUND EXCESS FILING FEE
ORDER CORRECTING THE DOCKET
ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Petitioner Marquez Winters, Tennessee Department of Corrections prisoner number 327881, an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, through counsel, filed a petition pursuant to 28 U.S.C. § 2254 on March 30, 2006 and paid a filing fee of $250.[1] The Clerk shall record the respondent as WTSP warden Tony Parker.[2]

---

[1]  The habeas filing fee is five dollars ($5.00). The Clerk shall, within five business days of the date of entry of this order, mail petitioner's counsel a check in the amount of $245, representing the excess filing fee.

[2]  Although the petition lists Tennessee Attorney General Paul Summers as an additional respondent, the proper respondent to a habeas petition is the petitioner's custodian. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Clerk is ORDERED to remove Summers as a party to this action.

I.   <u>STATE COURT PROCEDURAL HISTORY</u>

Following a jury trial in the Shelby County Criminal Court, Winters was convicted of aggravated kidnapping and attempted first degree murder. The trial court sentenced Winters to consecutive maximum sentences totaling thirty-seven (37) years. The Tennessee Court of Criminal Appeals affirmed. <u>State v. Winters</u>, No. W2001-00740-CCA-R3-CD, 2002 WL 31322542 (Tenn. Crim. App. Oct. 15, 2002), <u>perm. app. denied</u> (Tenn. Feb. 24, 2003).

Winters filed a petition pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122, in the Shelby County Criminal Court on or about April 15, 2003 in which he alleged that trial and appellate counsel rendered ineffective assistance. The postconviction court conducted an evidentiary hearing and denied relief on December 12, 2003. The Tennessee Court of Criminal Appeals affirmed. <u>Winters v. State</u>, No. W2004-00058-CCA-R3-PC, 2005 WL 396381 (Tenn. Crim. App. Feb. 18, 2005), <u>perm. app. denied</u> (Tenn. May 23, 2005).

The Tennessee Court of Criminal Appeals summarized the facts underlying the criminal charge as follows:

> On the evening of May 18, 1997, Vernon Earnest, his sister, and Sherman Bennett were driving down Elvis Presley Boulevard, near Rose Hill Cemetery in Memphis, and noticed a naked and severely injured woman on the side of the road. When they stopped to help, the woman told them that "Low-down" and someone named Nicki or Nick had injured her.
>
> Investigators later questioned the victim, Natalie Bolton, about the incident. The victim reported that she

2

was a member of the Gangsters Disciples and that other gang members had forced their way into her apartment and assaulted her. The victim testified that three black females kicked her door in and dragged her from her home. As she resisted, they tore off her clothes and hit her on the head with a bottle. Two black males, one of whom the victim identified as the Defendant, were also present. Eyewitnesses at the apartment complex confirmed the victim's account of the abduction.

The victim testified that she was then placed in the back of a truck, blindfolded with a bandana, and driven to an unknown location. When the victim and her abductors arrived at the location, the victim was seated in a chair in the middle of a group of people. During this time, the victim was able to identify the voices of several of her abductors. The victim recognized the Defendant by his distinctively "squeaky" voice, which was the result of a gunshot wound to his throat. The victim also recognized the voice of the Defendant's girlfriend, Nadia. The victim testified that the Defendant tried to force her to drink a glass of bleach and ammonia, and when she refused, he poured the glass over her head and hit her in the face with the empty glass, knocking out a tooth. The victim testified that she and her abductors remained at this location for about one hour, and during that time, the Defendant continued to talk to her and to assault her.

The victim was then forced into the trunk of a car and driven to Rose Hill Cemetery. Her blindfold was secured, and another bandana was placed over her mouth. After arriving at the cemetery, the victim was forced to a secluded spot, where she listened to the Defendant and his girlfriend argue about who was going to shoot the victim first. The victim was then shot several times. The shots were not fired in succession; rather, the Defendant and his girlfriend talked to each other between shots. The victim testified that she did not know who fired the first shot, but she was certain that the Defendant fired the last shot because her blindfold had slipped down around her neck. After "playing dead" for about fifteen minutes, the victim crawled to the road and was discovered by passers by.

A records clerk at the Regional Medical Center in Memphis testified that the victim was admitted on May 18, 1997 with six gunshot wounds in her chest, abdomen, and

pelvis. The victim had also sustained facial and nasal fractures, loose teeth, bladder injuries, and bowel injuries.

While the victim was in the hospital, she identified the Defendant as one of her attackers. Investigators testified that they were initially unable to locate the Defendant for questioning. Eventually, the Defendant went to the police station and offered information about what he called "the Natalie Bolton murder." One officer testified that the Defendant told police he had heard about the incident through female members of the Gangster Disciples, but also stated that he had heard gunshots and had seen the shooter. Once the Defendant stated that he had been present at the crime scene, the officer informed him that the victim had not in fact died and that she had identified the Defendant as one of her attackers. At that point, the Defendant refused to further discuss the incident.

<u>State v. Winters</u>, 2002 WL 31322542, at *1-*2.[3]

## II.  <u>PETITIONER'S FEDERAL HABEAS CLAIMS</u>

In this federal habeas petition, Winters raises the following issues:

1.  Whether trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to object to the introduction of hearsay;

2.  Whether he was denied his right to testify, in violation of the Fifth and Fourteenth Amendments;

3.  Whether trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, for failing adequately to investigate the case; and

4.  Whether appellate counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to raise issues that were preserved in the motion for a new trial, including the sufficiency of the evidence.

---

[3]     Winters was represented by his current attorney on appeal of the denial of his postconviction petition. It is not clear whether present counsel represented Winters before the postconviction court.

III. <u>LEGAL STANDARDS FOR EVALUATING HABEAS PETITIONS</u>

    A.   <u>Waiver and Procedural Default</u>

         Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

    (A)  the applicant has exhausted the remedies available in the courts of the State;  or

    (B)  (i)  there is an absence of available State corrective process;  or

          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. <u>E.g.</u>, <u>Granberry v. Greer</u>, 481 U.S. 129, 133-34 (1987); <u>Rose v. Lundy</u>, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"). A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. 28 U.S.C. § 2254(c); <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 477, 489-90 (1973).

     To exhaust his state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal

courts to the courts of the state that he claims is wrongfully confining him. Picard v. Connor, 404 U.S. 270, 275-76 (1971); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'" Id. at 163 (quoting Picard, 404 U.S. at 278). A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." Id.

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Id. When a petitioner raises different factual issues under the same legal theory he is required to present each factual claim to the highest state court in order to exhaust his state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. Pillette, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts

necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982); see also Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Moreover, the state court decision must rest primarily on federal law. Coleman v. Thompson, 501 U.S. 722, 734-35 (1991). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977). However, the state-court decision need not explicitly address the federal claims; instead, it is enough that the petitioner's brief squarely presents the issue. Smith v. Digmon, 434 U.S. 332 (1978) (per curiam); see also Baldwin v. Reese, 541 U.S. 27, 30-32 (2004) (a federal habeas claim is fairly presented to a state appellate court only if that claim appears in the petitioner's brief).

When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits

the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. <u>Coleman</u>, 501 U.S. at 752-53; <u>Teaque v. Lane</u>, 489 U.S. 288, 297-99 (1989); <u>Wainwright v. Sykes</u>, 433 U.S. at 87-88; <u>Rust</u>, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that he was prejudiced in order to obtain federal court review of his claim. <u>Teaque</u>, 489 U.S. at 297-99; <u>Wainwright v. Sykes</u>, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. <u>Coleman</u>, 501 U.S. at 752-53; <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (quoting <u>Murray</u>, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Id.</u>

The conduct of Winters's postconviction proceedings was governed by Tennessee's Post-Conviction Procedure Act, Tenn. Code

Ann. §§ 40-30-101 to -122. That act specifies types of procedural default that might bar a state court from reviewing the merits of a constitutional claim. A one-year statute of limitations governs the filing of petitions. Id. at § 40-30-102. The statute also enunciates a standard by which state courts are to determine whether to consider the merits of post-conviction claims:

> Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

Id. at § 40-30-106(f).[4]

The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas petition as barred by a procedural default caused by failing to file within the Tennessee statute of limitations on

---

[4]   Tenn. Code Ann. § 40-30-106 continues:

(g)   A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

   (1)   The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

   (2)   The failure to present the ground was the result of state action in violation of the federal or state constitution.

(h)   A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

postconviction relief. <u>Hannah v. Conley</u>, 49 F.3d 1193, 1194-95 (6th Cir. 1995) (construing pre-1995 statute and stating "the language of Tenn. Code Ann. § 40-30-102 is mandatory"). In this case, the prisoner's right to file any further state postconviction petition is barred by the one-year statute of limitations and, therefore, he does not have the option of returning to state court to exhaust any claim presented in this § 2254 petition.

      B.    <u>Legal Standard for Merits Review</u>

      The standard for reviewing a habeas petitioner's constitutional claims on the merits is enunciated in 28 U.S.C. § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This Court must determine whether the state court adjudications of the claims that were decided on the merits were either "contrary to" or an "unreasonable application of" "clearly established" federal law as determined by the United States Supreme Court. This Court must also determine whether the state court decision with

10

respect to each issue was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

    1.   § 2254(d)(1)

The Supreme Court has issued a series of decisions setting forth the standards for applying § 2254(d)(1).[5] In (Terry) Williams v. Taylor, 529 U.S. 362, 404 (2000), the Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. A state-court decision may be found to violate the "contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

Id. at 405-06 (citations omitted); see also Price v. Vincent, 538 U.S. 634, 640 (2003); Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).[6] The Supreme Court has

---

    [5]   By contrast, there is a dearth of caselaw concerning the standards for applying § 2254(d)(2).

    [6]   The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (emphasis (continued...)

11

emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406; see also id. at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Cone, 535 U.S. at 694; see also Andrade, 538 U.S. at 75; Williams, 529 U.S. at 409.[7] "[A]n unreasonable application of federal law is different from an incorrect application of

---

[6]      (...continued)
in original).

[7]      Although the Supreme Court in Williams recognized, in dicta, the possibility that a state-court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," id. at 408. The Williams Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," id. at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue. See Williams v. Coyle, 260 F.3d 684, 699-700 (6th Cir. 2001).

federal law." <u>Williams</u>, 529 U.S. at 410.[8] "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409.[9]

Moreover, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This provision "expressly limits the source of law to cases decided by the United States Supreme Court." <u>Harris v. Stovall</u>, 212 F.3d 940, 944 (6th Cir. 2000). As the Sixth Circuit explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an

---

[8]   <u>See also</u> <u>Andrade</u>, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); <u>Cone</u>, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly."); <u>Williams</u>, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[9]   <u>See also</u> <u>Brown v. Payton</u>, 125 S. Ct. 1432, 1442 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

2.   § 2254(d)(2)

There is almost no case law about the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In a decision applying this standard, the Supreme Court observed that § 2254(d)(2) must be read in conjunction with 28 U.S.C. § 2254(e)(1), which provides that a state court's factual determinations are presumed to be correct unless rebutted by clear and convincing evidence. Miller-El

14

v. Dretke, 125 S. Ct. 2317, 2325 (2005).[10] It appears that the
Supreme Court has, in effect, incorporated the standards applicable
to the "unreasonable application" prong of § 2254(d)(1). Rice v.
Collins, 126 S. Ct. 969, 976 (2006) ("Reasonable minds reviewing
the record might disagree about the prosecutor's credibility, but
on habeas review that does not suffice to supersede the trial
court's credibility determination."). That is consistent with the
approach taken by the Sixth Circuit, which stated, in an
unpublished decision, that

> a federal habeas court may not grant habeas relief under
> § 2254(d)(2) simply because the court disagrees with a
> state trial court's factual determination. Such relief
> may only be granted if the state court's factual
> determination was "objectively unreasonable" in light of
> the evidence presented in the state court proceedings.
> Moreover . . . , the state court's factual determinations
> are entitled to a presumption of correctness, which is
> rebuttable only by clear and convincing evidence.

Young v. Hofbauer, 52 Fed. Appx. 234, 236 (6th Cir. Dec. 2, 2002)
(citing 28 U.S.C. § 2254(e)(1));[11] see also Stanley v. Lazaroff, 01-
4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); Jackson v.
Holland, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21,
2003) ("Though the Supreme Court has not yet interpreted the
'unreasonable determination' clause of § 2254(d)(2), based upon the
reasoning in Williams, it appears that a court may grant the writ

---

[10]    But cf. Rice v. Collins, 126 S. Ct. 969, 974 (2006) (recognizing that
it is unsettled whether there are some factual disputes where § 2254(e)(1) is
inapplicable).

[11]    See also Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (applying
presumption of correctness to factual determinations of state appellate courts).

if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.") (citing <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

IV.   <u>ANALYSIS OF PETITIONER'S CLAIMS</u>

    A.   <u>Counsel's alleged failure to object to the introduction of hearsay (Claim 1)</u>

      In his first claim for relief, Winters contends that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to object to the admission of hearsay.

      A claim that ineffective assistance of counsel has deprived a habeas petitioner of his Sixth Amendment right to counsel is controlled by the standards enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

      To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688.

16

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1998) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'").

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. See Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir.

1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." <u>Strickland</u>, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. <u>See</u> <u>id.</u> at 697.

Winters raised this issue in his postconviction petition, and the Tennessee Court of Criminal Appeals rejected it on the merits, stating as follows:

> Additionally, the petitioner complained that trial counsel should have objected to the testimony of the State's witnesses, Sherman Ray Bennett, Vernon Earnest, and Officer Ricky Davidson. Specifically, the petitioner argued that trial counsel should have objected when the witnesses testified that, upon discovery of the victim who had just been shot, the victim identified the petitioner as her assailant. The petitioner claimed that the statements were hearsay and were therefore objectionable. Further, the petitioner complained that on cross-examination counsel asked the witnesses questions regarding the hearsay statements, compounding the error.

> . . . .

> . . . Trial counsel stated that he did not object to the "hearsay" statements of Bennett, Earnest, and Davidson because he believed such statements were admissible under the excited utterance exception to the hearsay rule. Additionally, trial counsel maintained that he asked the witnesses about the hearsay statement on cross-examination for "clarification."

> . . . .

> The petitioner also complains that trial counsel was ineffective in failing to object to the hearsay testimony of Bennett, Earnest, and Davidson that shortly after the victim was shot, she identified the petitioner as her assailant. Further, the petitioner claims that trial counsel was ineffective "in soliciting the same damaging hearsay testimony on cross-examination."

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). It is undisputed that the testimony by the three witnesses wherein they stated that the victim told them that the petitioner was her assailant was hearsay testimony. As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. <u>See</u> Tenn. R. Evid. 802. Trial counsel stated that he did not object to the testimony because he believed the statements were admissible as excited utterances. A statement is considered an excited utterance if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2).

In the instant case, the victim, bleeding from multiple bullet wounds that she had just received, was found by Bennett and Earnest. The victim stated that the petitioner had shot her. Officer Davidson was called to the scene where he found the victim, still battered, bloody, and naked, awaiting medical assistance. She described the offenses and identified the petitioner as the person who shot her. The post-conviction court determined that such statements qualified as excited utterances and would have been admissible at trial even if trial counsel had objected. We agree.

Further, the petitioner claims that trial counsel was ineffective for asking questions regarding the victim's excited utterance on cross-examination. Trial counsel opined that he asked questions for "clarification," indicating that the questions were asked as a matter of trial strategy. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." <u>See</u> <u>State v. Hellard</u>, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, we note that in light of the victim's damning testimony in which she positively identified the petitioner as the shooter, the petitioner suffered no prejudice as a result of the questions asked by trial counsel. This issue is without merit.

<u>Winters v. State</u>, 2005 WL 396381, at *2, *3, *5-*6 (citation and footnote omitted).

Analysis of this issue is complicated by the fact that Winters does not refer to the standards for evaluating habeas petitions on the merits and does not set forth his basis for challenging the decision of the Tennessee Court of Criminal Appeals. The petitioner does not advance any argument why the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [<u>Strickland v. Washington</u>] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." <u>Williams v. Taylor</u>, 529 U.S. at 406.

It is not clear whether Winters contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of <u>Strickland</u>. Although it can be inferred that Winters disagrees with the state-court decision, he makes no attempt to analyze the state-court's reasoning in light of <u>Strickland</u>. Moreover, Winters makes no effort to demonstrate that the state-court decision is objectively unreasonable, rather than merely incorrect. <u>Williams</u>, 529 U.S. at 410; <u>see also</u> <u>supra</u> p. 13 n.8. In this case, the Tennessee Court of Criminal Appeals stated explicitly that the so-called hearsay was admissible as an "excited

utterance," <u>Winters v. State</u>, 2005 WL 396381, at *5, and, therefore, neither prong of the <u>Strickland</u> standard was satisfied. As for trial counsel's decision to cross-examine these witnesses on the victim's identification of Winters, the Tennessee Court of Criminal Appeals concluded that Winters suffered no prejudice from that strategic decision "in light of the victim's damning testimony in which she positively identified the petitioner as the shooter," <u>id.</u> at *6.

Finally, Winters does not address whether the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing. 28 U.S.C. § 2254(d)(2). Even if his argument can be construed as relying on that provision, Winters has not satisfied his burden of demonstrating, by clear and convincing evidence, that the state-court's decision that he had failed to establish deficient performance and prejudice, within the meaning of <u>Strickland</u>, was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing.

The first issue is without merit and is DISMISSED.

B.   <u>The alleged violation of the petitioner's right to testify (Claim 2)</u>

In his second claim for relief, Winters contends that he was denied the right to testify at trial, in violation of the Fifth and Fourteen Amendments, due to counsel's failure to conduct an

21

adequate <u>voir</u> <u>dire</u> establishing that his waiver of his right to testify was intelligent and voluntary.

Winters did not raise a Fifth Amendment issue on direct appeal or in his postconviction petition and, therefore, that issue is barred by procedural default.

In his postconviction petition, Winters alleged that trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to demonstrate on the record that his waiver of his right to testify was intelligent and voluntary, and it is possible that Winters intended to raise that claim in this petition. The Tennessee Court of Criminal Appeals rejected that claim on the merits:

> At the post-conviction hearing, the petitioner testified that he met with trial counsel prior to trial approximately four times for brief periods of time. The petitioner could not recall discussing trial strategy with trial counsel, but he did recall discussing his right to testify at trial. The petitioner asserted that he was aware that he had a right to testify; however, he qualified his assertion, maintaining that he believed the ultimate decision regarding whether he should testify was made by counsel. Regardless, the petitioner admitted that he knew that he could have testified at trial despite counsel's advice.
>
> . . . .
>
> Trial counsel asserted that he reviewed with the petitioner his right to testify at trial. Counsel advised the petitioner that testifying would not be in his best interest. The petitioner seemed to understand his right to testify, and he never indicated to trial counsel that he wished to testify. Trial counsel conceded that he was unfamiliar with <u>Momon v. State</u>, 18 S.W.3d 152 (Tenn. 1999), which case outlines a procedure for affirmatively placing in the record a defendant's waiver of the right

to testify. Regardless, trial counsel believed that the voir dire he conducted of the petitioner at trial demonstrated that the petitioner knowingly and voluntarily waived his right to testify. . . .

. . . .

On appeal, the petitioner asserts that his trial counsel was ineffective by failing to explain the petitioner's right to testify in a manner that complied with the dictates of Momon v. State, 18 S.W.3d 152 (Tenn. 1999) . . . . In connection with the petitioner's first complaint, he specifically alleges that the limited voir dire conducted by counsel in which the petitioner waived his right to testify, did not conform to the procedure suggested in Momon. Thus, "trial counsel was ineffective and [the petitioner] did not fully understand his fundamental right to testify and that the jury could not hold it against him if he did not testify[.]"

It is unquestionable that a criminal defendant has a fundamental, constitutional right to testify at trial. Id. at 161. This fundamental right may only be waived by the defendant himself. Id. "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 161-62. Such waiver may not be presumed by a silent record. Id. at 162.

In Momon, our supreme court outlined procedural safeguards to be employed by the trial court to ensure that a defendant's knowing, voluntary, and intelligent waiver of the right to testify would be reflected on the record. Id. However, because Momon served only to clarify the existing law, "the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. at 163.

At the conclusion of defense proof at trial, trial counsel conducted a voir dire examination of the petitioner as follows:

23

Trial counsel:  Mr. Winters, I'm doing this just to make sure—you and I have spoken about this case, right?

The petitioner: Right.

Trial counsel:  And I've gone over all your legal rights; is that correct?

The petitioner: Right[.]

Trial counsel:  And I've advised you that if you wanted to testify, you could testify; is that right?

The petitioner: Right.

Trial counsel:  Okay. Did we come to a decision that it would be in your best interests to not testify?

The petitioner: Not testify, right.

Trial counsel:  Okay. Did you agree with that?

The petitioner: Yes, I did.

Trial counsel:  Anybody making you not testify?

The petitioner: No.

After reviewing the proof, the post-conviction court found that

the [petitioner] testified here in this court that he understood that he had a right to take the stand if he wanted to. And that he agreed with [trial counsel] that he would not take the stand. That's all that's necessary. If he understands he can take the stand or he can remain silent and not take the stand. And I got from the [petitioner's] testimony on cross examination that he understood all of that.

We agree with the post-conviction court that the record affirmatively demonstrates that the petitioner was aware of his right to testify and voluntarily waived that

24

right. Therefore, we conclude that trial counsel was not ineffective in this regard.

Winters v. State, 2005 WL 396381, at *2, *3, *4-*5.

As with the previous issue, Winters has presented no argument that the decision of the Tennessee Court of Criminal Appeals was contrary to, or an unreasonable application of, clearly established federal law, as required by 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, as required by 28 U.S.C. § 2254(d)(2). Winters testified at the postconviction hearing that he understood that the ultimate decision as to whether to testify was his. Winters v. State, 2005 WL 396381, at *2, *5. Winters does not address that conclusion and, even if the Court were to conclude that it was objectively unreasonable, he does not even attempt to set forth the nature of the testimony he would have offered at trial or establish that there is a reasonable likelihood that, if only he had testified, the result of his trial would have been different.

The second issue is without merit and is DISMISSED.

C.    The alleged failure adequately to investigate the case (Claim 3)

In his third claim for relief, Winters contends that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing adequately to investigate the case. The petition does not elaborate on the factual basis for this claim.

25

Winters raised this issue in his postconviction petition, and the Tennessee Court of Criminal Appeals summarily rejected it on the merits:

> At the post-conviction hearing, the petitioner testified that he met with trial counsel prior to trial approximately four times for brief periods of time. The petitioner could not recall discussing trial strategy with trial counsel . . . .
>
> . . . .
>
> At the post-conviction hearing, the petitioner's trial counsel testified that prior to trial he met with the petitioner several times for periods ranging from thirty minutes to two hours. . . .
>
> . . . .
>
> At the conclusion of the hearing, the post-conviction court found that neither the petitioner's trial counsel nor his appellate counsel had been ineffective. Therefore, the petitioner was not entitled to post-conviction relief. . . .
>
> . . . .
>
> Finding no error, we affirm the judgment of the post-conviction court.

Winters v. State, 2005 WL 396381, at *2, *3, *7.

As a preliminary matter, Winters's presentation of this claim does not comply with the habeas rules. Rule 2(c) of the Section 2254 Rules provides, in pertinent part, that the petition must "(1) specify all the grounds for relief available to the petitioner; [and] state the facts supporting each ground." Notice pleading is not permitted in habeas petitions. Blackledge v.

<u>Allison</u>, 431 U.S. 63, 75-76 (1977); <u>Short v. United States</u>, 504 F.2d 63, 65 (6th Cir. 1974).

This claim is not alleged with sufficient specificity to permit an evaluation of its merits. Winters does not state that, if only counsel had devoted more time to preparing for trial, he would have discovered any additional evidence or witnesses or would have devised a more effective trial strategy. Winters also does not argue that, if only counsel had devoted more time to preparing for trial, there is a reasonable probability that the result of the trial would have been different.

Moreover, Winters has presented no argument that the decision of the Tennessee Court of Criminal Appeals was contrary to, or an unreasonable application of, clearly established federal law, as required by 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, as required by 28 U.S.C. § 2254(d)(2).

The third issue is without merit and is DISMISSED.

D.   <u>The alleged ineffective assistance rendered by appellate counsel (Claim 4)</u>

In his fourth claim for relief, Winters contends that his appellate counsel rendered ineffective assistance by raising only issues pertaining to the sentence on direct appeal and by failing to inform him that she had made that strategic decision.

27

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985). The failure to raise a nonfrivolous issue on appeal does not constitute <u>per se</u> ineffective assistance of counsel, as "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (citation omitted). Claims of ineffective assistance of appellate counsel are evaluated using the <u>Strickland</u> standards. <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000) (applying <u>Strickland</u> to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); <u>Smith v. Murray</u>, 477 U.S. at 535-36 (1986) (failure to raise issue on appeal). Thus, in order to establish a claim that appellate counsel was ineffective in failing to raise an issue, a prisoner

> must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

<u>Smith v. Robbins</u>, 528 U.S. at 285 (citation omitted).[12]

---

[12]   The Sixth Circuit has articulated a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

(continued...)

Winters raised an issue of ineffective assistance of appellate counsel in his postconviction petition, and the Tennessee Court of Criminal Appeals rejected it on the merits:

Finally, the petitioner contended that his appellate counsel was ineffective for raising only the issue of his sentences on appeal. The petitioner stated that he believed appellate counsel intended to appeal his convictions and his sentences. The petitioner maintained, "I feel like she should have appealed the whole case." The petitioner further stated that after his sentences were affirmed on direct appeal, his counsel filed a Rule 14 application for permission to withdraw instead of filing a Rule 11 application for permission to appeal to the supreme court. . . . Regardless, the petitioner testified that he filed a pro se application for permission to appeal, which application was denied by the supreme court.

---

[12]    (...continued)
1.    Were the omitted issues "significant and obvious?"

2.    Was there arguably contrary authority on the omitted issues?

3.    Were the omitted issues clearly stronger than those presented?

4.    Were the omitted issues objected to at trial?

5.    Were the trial court's rulings subject to deference on appeal?

6.    Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7.    What was the appellate counsel's level of experience and expertise?

8.    Did the petitioner and appellate counsel meet and go over possible issues?

9.    Is there evidence that counsel reviewed all the facts?

10.    Were the omitted issues dealt with in other assignments of error?

11.    Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Franklin v. Anderson, 434 F.3d 412, 429 (6th Cir. 2006) (citing Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999)).

. . . .

At the post-conviction hearing, the petitioner's appellate counsel testified that she examined the petitioner's trial record to determine the issues most likely to succeed on appeal. She reviewed the issues raised in the petitioner's motion for new trial, researched the issues, and determined that "they were in my judgment slam dunk losers." Appellate counsel stated that the propriety of petitioner's sentences was the only issue "ripe" for appellate review. Counsel stated that she and the petitioner exchanged letters concerning his appeal; however, "the ultimate decision as to what goes in the brief is mine, not [the petitioner's]."

Appellate counsel also testified that after this court affirmed the petitioner's sentences, she declined to file a Rule 11 application for permission to appeal to our supreme court. Instead, appellate counsel filed for permission to withdraw pursuant to Rule 14. Additionally, counsel informed the petitioner that she was withdrawing from representation, but the petitioner had the right to file a pro se application for permission to appeal.

At the conclusion of the hearing, the post-conviction court found that neither the petitioner's trial counsel nor his appellate counsel had been ineffective. Therefore, the petitioner was not entitled to post-conviction relief. On appeal, the petitioner contests this ruling.

. . . .

The petitioner also makes two complaints regarding the representation of appellate counsel. First, the petitioner contends that counsel should have raised additional issues on appeal instead of challenging only the propriety of his sentences. However, this court has previously observed,

"[F]ailure to preserve and/or assert all arguable issues on appeal is not per se ineffective assistance of counsel, since the failure to do so may be a part of the counsel's strategy of defense. Counsel is not constitutionally required to argue every issue on appeal, or present issues chosen by his client. The determination of which issues to

present on appeal is a matter of counsel's discretion."

State v. Matson, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (quoting State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). Moreover, "[a]ppellate counsel are not constitutionally required to raise every conceivable issue on appeal." Carpenter v. State, 126 S.W.3d 879, 887 (Tenn. 2004).

As we have noted, in the instant case, appellate counsel testified that after reviewing the petitioner's trial record, she determined that all other issues were "slam dunk losers." She further determined that the propriety of the petitioner's sentences was the only issue "ripe" for appellate review. We can discern nothing in the record to indicate that counsel's decision to forego all issues except for the propriety of the petitioner's sentences was ineffective assistance. See Carpenter, 126 S.W.3d at 888.

Finally, the petitioner complains that after his sentence was affirmed by this court, his appellate counsel filed a Rule 14 application for permission to withdraw instead of filing a Rule 11 application for permission to appeal to the supreme court. Rule 14 of the Rules of the Supreme Court provides that counsel for an indigent party must obtain permission to withdraw from representation "not later than fourteen (14) days after the intermediate court's entry of final judgment." Tennessee Rule of Appellate Procedure 11 provides, "An appeal by permission may be taken from a final decision of the Court of Appeals or Court of Criminal Appeals to the Supreme Court only on application and in the discretion of the Supreme Court."

At the post-conviction hearing, appellate counsel testified that after this court affirmed the petitioner's sentence, she found no merit in further appealing the petitioner's case. Therefore, she filed a Rule 14 application for permission to withdraw. She notified the petitioner of her withdrawal and of his right to file a pro se application for permission to appeal. The petitioner testified that he was aware of appellate counsel's withdrawal, and that he filed a pro se application for permission to appeal to our supreme court. Our supreme court denied the petitioner permission to appeal. We can discern no impropriety in appellate

31

counsel's actions as she followed the procedure set forth
in Rule 14. This issue is without merit.

<u>Winters v. State</u>, 2005 WL 396381, at *2, *3, *6–*7 (footnote

omitted).

As a preliminary matter, the opinion of the Tennessee
Court of Criminal Appeals does not affirmatively establish that
Winters made any argument that he was unaware of the limited scope
of issues that were raised on direct appeal. The Court will assume,
for purposes of this order only, that Winters testified to that
effect at the postconviction hearing.

Winters's presentation of this claim does not comply with
Rule 2(c) of the Section 2254 Rules, as he has not identified the
potentially meritorious issues he contends his attorney should have
raised on direct appeal and has not attempted to demonstrate that,
if only those issues had been presented, there is a reasonable
probability he would have prevailed on appeal.

Finally, Winters has presented no argument that the
decision of the Tennessee Court of Criminal Appeals was contrary
to, or an unreasonable application of, clearly established federal
law, as required by 28 U.S.C. § 2254(d)(1), or was based on an
unreasonable determination of the facts in light of the evidence
presented at the state-court hearing, as required by 28 U.S.C. §
2254(d)(2).

The fourth issue is without merit and is DISMISSED.

Because it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Section 2254 Rules. The petition is DISMISSED.

V.   <u>APPEAL ISSUES</u>

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); <u>see also</u> Fed. R. App. P. 22(b); <u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard

announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893). Thus,

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342 (cautioning courts against conflating their analysis of the merits

with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[13]

In this case, there can be no question that any appeal by this petitioner on any of the issues raised in this petition does not deserve attention for the reasons previously stated. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917,[14] the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner

---

[13]    By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

[14]    The appellate filing fee increased on $455 effective April 9, 2006.

must file his motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in</u> <u>forma</u> <u>pauperis</u> is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 25th day of April, 2006.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE